# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Wayne R. Andersen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 1 C 1174 | **DATE** | 3/25/2002 |
| **CASE TITLE** | Manu Patel et al vs. City of Chicago et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **Enter MEMORANDUM, OPINION AND ORDER: For the foregoing reasons, the defendants' motion to dismiss Counts I - III of plaintiffs' complaint for lack of subject matter jurisdiction pursuant to FRCP 12(b)(1) is granted. This case is terminated. This is a final and appealable order. Plaintiff's motion for conference with the court [20-1] is denied.** *(14-1)*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | **Document Number** |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | MAR 2 7 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | **33** |
| ✓ | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| TSA | courtroom deputy's initials | | date received in central Clerk's Office | mailing deputy initials |

CLERK U.S. DISTRICT COURT

02 MAR 26 PH 2: 05

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



DOCKETED

MAR 2 7 2002

| | | |
|---|---|---|
| MANU PATEL, CHANCHAL PATEL MUKTI ENTERPRISES INC., an Illinois Corporation, d/b/a APACHE MOTEL, et al., | ) ) ) ) | |
| Plaintiffs, | ) ) | MAR 2 7 2002 |
| v. | ) ) | Honorable Wayne R. Andersen |
| CITY OF CHICAGO, a Municipal Corporation, RICHARD M. DALEY, individually and in his official capacity as Mayor of the City of Chicago, and PATRICK J. O'CONNOR, individually and in his official capacity as Alderman of the 40th Ward of the City of Chicago, | ) ) ) ) ) ) ) | No. 01 C 1174 |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

This case is before the Court on the motion of the defendants City of Chicago, Richard M. Daley, and Patrick J. O'Connor to dismiss the plaintiffs' complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). For the following reasons, the defendants' motion is granted.

### BACKGROUND

The plaintiffs in this case are owners of a number of hotels on Chicago's north side who allege that an ordinance passed by the City Council of the City of Chicago violated their right to equal protection under the Fourteenth Amendment of the United States Constitution. The specific hotels that the plaintiffs allege were targeted by the City Council's ordinance are the Apache Motel located at 5535 N. Lincoln Avenue, the Diplomat Motel at 5230 N. Lincoln Avenue, the Guest House Motel located at 2600 W. Bryn Mawr Avenue, the Lincoln Inn located

at 5952 N. Lincoln Avenue, the Lincoln Motel located at 5900 N. Lincoln Avenue, the O-MI

Motel located at 5611 N. Lincoln Avenue, the Patio Motel located at 6250 N. Lincoln Avenue,

the Rio Motel located at 6080 N. Lincoln Avenue, the Stars Motel located at 6100 N. Lincoln

Avenue, the Summit Motel located at 5308 N. Lincoln Avenue, and the Tiptop Motel located at

6060 N. Lincoln Avenue. The defendants in this case are the City of Chicago, Richard M. Daley,

Mayor of the City of Chicago, and Patrick J. O'Connor, Alderman of the 40th Ward where

almost all of the motels identified above are located.

On or about November 3, 1999, the Chicago City Council passed an ordinance which

designated a certain geographical area of Chicago to be known as the Lincoln Avenue

Redevelopment Area. The Redevelopment Area is located along Lincoln Avenue, bounded by

Foster Avenue on the south and Devon Avenue on the north, and comprises approximately 181

acres, including 50 full and partial blocks. All of the motels described above are located within

the Redevelopment Area. The ordinance further provided that the Redevelopment Area would

be redeveloped pursuant to a Redevelopment Plan, which would be financed by tax increment

financing that the City intends to implement pursuant to the Illinois Tax Increment Allocation

Redevelopment Act, 65 ILCS 5.11-74.4-1, *et seq.* (hereinafter the "TIF Act").

Along with the subject motels, there are also many other types of structures as well as

vacant land located within the Redevelopment Area. These properties are owned by many

separate owners, most of whom are not currently known to the plaintiffs. According to the

Redevelopment Plan, some of the uses or structures on these other properties include, *inter alia*:

clothing/department stores; stores which sell automotive supplies, electronics, and music; travel

agencies; beauty shops; real estate agencies; cleaners; insurance brokers; medical facilities; and

2

gas stations. The Redevelopment Plan concludes that the Redevelopment Area qualifies for tax increment financing under the TIF Act because "numerous deteriorated and obsolete commercial buildings and a general lack of maintenance of properties characterizes the Redevelopment . . . Area."

As noted in the plaintiffs' complaint, section 5 of the ordinance acknowledges that the TIF Act grants the power of eminent domain to the City to further the goals of the City Council in enacting the Lincoln Avenue Redevelopment Project. However, the crux of the plaintiffs' complaint is that the Redevelopment Plan directs acquisition by eminent domain only of the land on which the motels are located. As evidence for this proposition, the plan of acquisition, which is included as (sub)Exhibit 4 of the ordinance, identifies only parcels on which the motels are located for acquisition through eminent domain.

However, as both parties acknowledge, the only event that has taken place with respect to the potential exercise of the power of eminent domain has been the placing of the subject motels on the acquisition list. To this point, no eminent domain proceedings have been initiated in the state court and no funds have been appropriated by the City Council for the potential taking of the plaintiffs' motels. Further, the Redevelopment Plan included in the ordinance provides that, for occupied buildings, if the City does not commence the acquisition process within four years from the date the ordinance was published, it must start the approval process all over by again seeking authorization and approval from the City Council and the City's Community Development Commission.

On February 22, 2001, the plaintiffs filed the instant three count complaint. Count I of the complaint alleges that the City of Chicago and Mayor Daley violated the plaintiffs' right to

3

equal protection under the Fourteenth Amendment by enacting the ordinance which authorized the City to institute eminent domain proceedings against the motels to further the goals of the Redevelopment Plan. Count II of the complaint charges the City of Chicago and Alderman O'Connor with threatened bad faith use of eminent domain authority. Finally, Count III of the complaint alleges that the defendants wrongfully attempted to inversely condemn the motels.

## DISCUSSION

The purpose of a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b) is not to decide the merits of the challenged claims but to test their sufficiency under the law. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In deciding a motion to dismiss, the Court reads the complaint literally, dismissing only "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which entitled him to relief." *Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99 (1957). "A complaint may not be dismissed unless it is impossible to prevail 'under any set of facts that could be proved consistent with the allegations.'" *Forseth v. Village of Sussex*, 199 F.3d 363, 369 (7th Cir. 2000) (quoting *Albiero v. City of Kankakee*, 122 F.3d 417, 419 (7th Cir. 1997)).

Initially in this case, the defendants argued that the complaint should be dismissed pursuant to both Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). During the course of an oral argument before the Court on October 19, 2001, we expressed our view that based on the Supreme Court's decision in *Village of Willowbrook v. Olech*, 528 U.S. 562, 120 S.Ct. 1073 (2000), the plaintiffs had properly stated an equal protection claim in their complaint. Accordingly, we orally denied the defendants' motion to dismiss based on Rule 12(b)(6). Nevertheless, counsel for the city requested that we turn our attention to the jurisdictional

arguments raised in the defendants' 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. We will do so now.

In their motion to dismiss, the defendants' have argued that this Court lacks jurisdiction to hear the instant lawsuit for two reasons. First, the defendants contend that the plaintiffs' equal protection claim is not ripe for review. Second, the defendants assert that the plaintiffs lack standing to pursue their equal protection claim in federal court. We will address each of these arguments in turn.

## I. Ripeness

Article III of the United States Constitution limits the judicial authority of the federal courts to hear only cases and controversies. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130 (1992). Ripeness and standing are two justiciability doctrines developed by our courts to determine whether a case or controversy exists in the manner necessary to support federal jurisdiction, and also to evaluate the wisdom of deciding an issue posed by a particular claim. *See Anders v. Fort Wayne Community Schools*, 124 F. Supp. 2d 618, 626 (N.D. Ind. 2000). In other words, "constitutional" ripeness, for lack of a better term, requires the Court to "evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n*, 149 F.3d 679, 687 n 3 (7th Cir.1998) (quoting *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149, 87 S.Ct. 1507 (1967)). It is the duty of the party attempting to invoke federal jurisdiction to establish that a case or controversy is ripe for decision by the Court. *See Transit Express, Inc. v. Ettinger*, 246 F.3d 1018, 1023 (7th Cir. 2001). Failure to establish ripeness strips a federal court of subject matter jurisdiction to hear the case.

Apart from what we have described as constitutional ripeness, the Supreme Court in *Williamson County Reg. Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 193-94, 105 S.Ct. 3108 (1985) articulated a special ripeness doctrine for constitutional property rights claims which precludes federal courts from adjudicating land use disputes until: (1) the regulatory agency has had an opportunity to make a considered definitive decision, and (2) the property owner exhausts available state remedies for compensation. *See also Forseth*, 199 F.3d at 368. For purposes of this opinion, we will characterize this special ripeness doctrine as *Williamson* ripeness.

While many courts have applied *Williamson* ripeness in land use cases, very few have analyzed it specifically in connection with constitutional ripeness. A general review of the decisions of those courts which have conducted a *Williamson* ripeness analysis reveals that all of the cases or controversies were constitutionally ripe at the time the court decided whether *Williamson* ripeness was appropriate. *See, e.g., Northwestern Univ. v. City of Evanston*, 2001 WL 219632 (N.D. Ill. March 6, 2001) (case was constitutionally ripe because university was challenging a local ordinance that had been enacted prior to the filing of the lawsuit); *Popp v. City of Aurora*, 2000 WL 804689 (N.D. Ill. March 15, 2000) (private citizens challenged a municipal condemnation proceeding in federal court after it had been filed in state court).

These outcomes make perfect sense. It is axiomatic that the justiciability doctrines included within Article III of the Constitution must take precedence over any prudential considerations the courts may fashion for specific factual situations, such as land use disputes. A determination that a land use controversy is ripe under *Williamson* must initially take a back seat to an analysis of constitutional ripeness. In other words, to borrow from the field of contract law, constitutional ripeness is a condition precedent that must be satisfied before a federal court can

even begin to determine if *Williamson* ripeness is applicable. If constitutional ripeness is lacking, then the inquiry ends and there is no need to even begin the analysis required by *Williamson* and its progeny.

In this case, given the above discussion, we conclude that we do not have subject matter jurisdiction to hear the plaintiffs' complaint because the case is not constitutionally ripe. As alluded to above, unless a case is constitutionally ripe, a court cannot be assured that the matter is sufficiently concrete and the facts sufficiently developed for the Court to render a decision that will resolve the dispute and affect the conduct of the parties. *See Abbott Lab.*, 387 U.S. at 148 (ripeness prevents courts from entangling themselves in abstract disagreements). To constitute an actual case or controversy, the issue involved must be "fit" for review. *See id.* at 149. The critical issue concerning fitness for review is whether the claim involves uncertain and contingent events that may not occur as anticipated or may not occur at all. *See Marusic Liquors, Inc. v. Daley*, 55 F.3d 258, 261 (7th Cir. 1995) (claim is unripe "when critical elements are contingent or unknown.").

Even assuming, as we must, that all allegations contained in the plaintiffs' complaint are true, we can imagine few cases that are less "fit" for review than this one. While the plaintiffs have expended a great deal of energy arguing that *Williamson* ripeness does not apply to their equal protection claims (which may or may not be correct), they have completely lost sight of their obligation to establish that this case is constitutionally ripe. It is undisputed that the City of Chicago has done nothing to the plaintiffs' motels other than place them on a list of parcels to be acquired as part of the Lincoln Avenue Redevelopment Plan. The city has not initiated any condemnation action nor have has it begun any eminent domain proceedings. In fact, the city has

7

not even appropriated funds which could be used to pay fair consideration to the plaintiffs for their property. What's more, counsel for the city has indicated that it is possible that the city may never initiate eminent domain proceedings. Therefore, we conclude that until such time as the city actually begins some sort of legal process that places the plaintiffs' motels at risk, either through condemnation or eminent domain, the entire lawsuit is speculative and contingent on actions of the city which may or may not ever occur.

In its response to the defendants' motion to dismiss, the plaintiffs cite to numerous cases which they contend require us to reject the motion. Because these cases deal exclusively with the proper application of *Williamson* ripeness as opposed to constitutional ripeness, we find these cases inapposite. For example, the plaintiffs cite to the Seventh Circuit's seminal opinion in *Forseth* as support for the argument that the motion to dismiss should be denied. While we agree with the plaintiffs that the Seventh Circuit did hold in *Forseth* that a properly stated equal protection claim is not subject to *Williamson* ripeness, we conclude that this case is factually distinguishable from *Forseth*. In *Forseth*, the court implicitly recognized that the case satisfied the constitutional ripeness standard because the plaintiffs were actually harmed by the Village of Sussex's alleged interference with their proposed development of their property. 199 F.3d at 367. The situation presented in *Forseth* is clearly different from that present in this case. Here, as discussed above, there is no evidence that the city has actually taken action against the motels. Instead, the plaintiffs have presented us with a contingent situation in which the city may or may not proceed against their property. We cannot even reach the *Williamson* analysis presented in *Forseth* because this case is not constitutionally ripe.

Similarly, the plaintiffs' cite Chief Judge Aspen's opinion in *Northwestern Univ.* as authority in opposition to the motion to dismiss, and again we conclude that this case is factually distinguishable. In *Northwestern Univ.*, Chief Judge Aspen implicitly concluded that the case was constitutionally ripe because the university sought to invalidate the additional regulations imposed by the city on the university's property when it enacted a new historic preservation ordinance. 2001 WL 219632, at *1. Like in *Forseth*, but unlike in this case, the action taken by the city of Evanston against the university was concrete and the injury allegedly suffered was quantifiable. *See also Olech*, 528 U.S. at 563 (plaintiff sued village alleging that village's demand for 33-foot easement in order to connect her property to the municipal water supply violated equal protection clause).

Therefore, we find that, because the actions challenged by the plaintiffs in this lawsuit involve uncertain and contingent events that may not occur as anticipated or may not even occur at all, this case is not ripe for judicial review. Because this case is not constitutionally ripe, there is no need for us to proceed to a *Williamson* ripeness analysis. Accordingly, we will grant the motion to dismiss.

## II.    Standing

The Supreme Court has characterized the doctrine of standing as "an essential and unchanging part of the case-or-controversy requirement of Article III" of the Constitution. *Lujan*, 504 U.S. at 560. "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or particular issues." *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197 (1975). A party seeking to invoke a federal court's jurisdiction must demonstrate three things: (1) an "injury in fact" - an invasion of a legally recognized interest

9

which is concrete and particularized, actual or imminent, and not conjectural or hypothetical; (2) a causal link between that injury and the defendant's action, such that the injury is fairly traceable to the action complained of; and (3) that a favorable decision will likely redress the injury. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180-81, 120 S.Ct. 693 (2000) (citing *Lujan*, 504 U.S. at 560-61); *Sierakowski v. Ryan*, 223 F.3d 440, 442-43 (7th Cir. 2000); *Perry v. Village of Arlington Heights*, 186 F.3d 826, 829 (7th Cir. 1999). Recently, the Seventh Circuit confirmed that the pleading threshold to establish Article III standing is analogous to the liberal requirements of Federal Rule of Civil Procedure 8. *See Alliant Energy Corp. v. Bie*, 277 F.3d 916, 919-20 (7th Cir. 2002) ("general factual allegations" suffice at the pleading stage to establish standing).

Although there are certainly circumstances where the probability rather than the certainty of future injury may support standing to challenge the constitutionality of a municipal action, *see, e.g. Pennell v. City of San Jose*, 485 U.S. 1, 108 S.Ct. 849 (1988), "the Supreme Court has instructed that in order to invoke Article III jurisdiction a plaintiff in search of prospective equitable relief must show a significant likelihood and immediacy of sustaining some direct injury." *Sierakowski*, 223 F.3d at 443 (citing *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 115 S.Ct. 2097 (1995) and *City of Los Angeles v. Lyon*, 461 U.S. 95, 103 S.Ct. 1660 (1983)). For a plaintiff seeking injunctive relief to satisfy the Article III standing requirement, he must establish that the actions of the defendant constitute a real and immediate threat. The mere possibility that the defendant may sometime in the future act against the plaintiff does not establish a real and immediate case or controversy. *See Knox v. McGinnis*, 998 F.2d 1405, 1413 (7th Cir. 1993).

In this case, we conclude that the plaintiffs' prospects for future injury are purely speculative, and, therefore, the plaintiffs lack the requisite personal stake in the outcome of this litigation to establish standing to seek injunctive relief. As discussed in detail above, the city of Chicago has not initiated, at this time, any action against the plaintiffs' motels other than placing them on a list of parcels that potentially could be acquired as part of the Redevelopment Plan. In fact, the likelihood that the city will actually institute eminent domain proceedings against any of the motels is uncertain. Since the ordinance was enacted in November of 1999, the city has not filed one eminent domain action nor has the City Council appropriated the necessary funds to acquire the subject motels. Furthermore, the plaintiffs have stated nothing in their complaint which makes us believe that the city will act against the motels in the near future. The prospects of future injury are purely speculative.

Therefore, we conclude that the plaintiffs have not satisfied the first element of the Article III standing test of *Lujan*. The prospect of the city initiating eminent domain proceedings against the plaintiffs' motels is simply too attenuated (especially considering that the city has not acted in the two years since the ordinance was enacted) at this time for us to allow this lawsuit to proceed. Further, we are troubled that if we were to deny the motion to dismiss, any ruling we would make on the request for injunctive relief would be in the form of an advisory opinion. Rendering such an advisory opinion falls outside the bounds of our jurisdiction under Article III to hear only cases or controversies. Therefore, the motion to dismiss Count I is granted.

## III.    Plaintiff's Remaining State Court Counts

In addition to the federal equal protection claim raised in Count I of the complaint, the plaintiffs have also raised two state court counts against the defendants. Count II is a state law

tort action called threatened bad faith use of eminent domain authority. Count III is an action to recover for a wrongful attempt to inversely condemn the motels. The general rule in this circuit is that when a federal claim is dismissed, a federal district court should relinquish jurisdiction over the supplemental state court causes of action. *See Van Harken v. City of Chicago*, 103 F.3d 1346, 1354 (7th Cir. 1997). Therefore, because we have dismissed the federal equal protection claim in Count I of the complaint on jurisdictional grounds, we will similarly dismiss the supplemental state court actions in Counts II and III.

## CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss Counts I - III of plaintiffs' complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) is granted. This case is terminated. This is a final and appealable order. Plaintiffs' motion for conference with the court concerning the use of extraneous materials [20-1] is denied as moot.


Wayne R. Andersen
United States District Judge

Dated: *March 25, 2002*